## FAY v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, First Department. December 24, 1908.)

1. STREET RAILROADS (§ 93\*) — PERSONS ON OR NEAR TRACK—INJURIES—NEGLI-
    GENCE.

> Plaintiff, as foreman for certain contractors, was extending the plat-
> form on the northerly side of the New York Terminal of the Brooklyn
> Bridge, on which defendant operated two lines of surface street cars.
> During the elevation of a girder through an opening in the floor of the
> bridge, plaintiff went on the platform to superintend the raising and see-
> ing a train approaching, signaled the flagman, and pushed the girder so
> that the train could pass it in safety. The girder was hoisted until it was
> six feet above the surface of the platform, and had swung two feet over
> the track, when a second train approached at full speed. Plaintiff mo-
> tioned to the flagman, but discovered that he was not there. Plaintiff
> held back the girder, so that the first coach passed without hitting it, but
> was unable to hold it longer, and it swung over the track, hitting the
> second car, and, in some way, caught plaintiff's leg and injured it. *Held*
> insufficient to show negligence on defendant's part; no request having
> been made to suspend the operation of the trains.

> [Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 195; Dec.
> Dig. § 93.\*]

2. STREET RAILROADS (§ 118\*)—PERSONS ON TRACK—INJURIES—INSTRUCTIONS.

> Plaintiff, a contractor's foreman, was injured while raising a girder
> to a platform by the girder being struck by a passing street railroad train.
> *Held*, that the court erred in refusing to charge that if, when approaching
> the girder, the motorman saw that his car could pass in safety, and plain-
> tiff gave no signal to stop, a verdict must be for defendant, the iron hav-
> ing come in contact with the body of the car after the front had passed,
> and in charging that, if the circumstances were such that an ordinarily
> prudent person in charge of the car would have been justified in conclud-
> ing that he could have passed in safety, then defendant would not have
> been negligent.

> [Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 260; Dec.
> Dig. § 118.\*]

> Clarke, J., dissenting.

Appeal from Trial Term, New York County.

Action by Edward Fay against the Brooklyn Heights Railroad Com-
pany. From a judgment for plaintiff, and from an order denying de-
fendant's motion for a new trial, it appeals. Reversed, and new trial
ordered.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGH-
LIN, CLARKE, and SCOTT, JJ.

D. A. Marsh, for appellant.
Jacob Rouss, for respondent.

INGRAHAM, J. The plaintiff was the foreman of a firm of
contractors named Snare & Triest, who were engaged in extending
the platform on the northerly side of the New York terminal of the
Brooklyn Bridge. This structure was built of iron, and at the time
of the accident the plaintiff had commenced putting in place an iron
girder about 25 feet long and weighing about 1¼ tons. The defend-
ant was running a line of surface street cars over the bridge. It oper-

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ated two tracks, one on each side of the platform then being extended. There had been an excavation in the floor of the bridge through which the girders used in the extension of the platform were to be hoisted. The southerly rail of the defendant's westerly track was about eight inches from the platform. On December 20, 1905, about a quarter to 8 in the morning, the plaintiff, who was the foreman of the men engaged in the work, started to hoist a girder through the excavation in the floor of the bridge. The plaintiff went upon the platform where the girder was to be hoisted to see that everything was all right there. The girder came up through the platform so that about a foot of it extended above the old platform, and, as the men continued to hoist it, it extended over the track of the defendant, and, as it extended further out, would interfere with the track so that passing cars would strike it. There was a flagman located on the tracks about 50 feet from where the plaintiff was on the platform to regulate the passing of trains. As a train approached, the plaintiff took hold of the girder and motioned to the flagman, as he said, to "be kind of careful." The flagman stopped the train that was approaching. When the train stopped, the plaintiff pushed the girder so that the train could pass in safety. The train then passed, and the men continued to hoist the girder until it was six feet above the surface of the platform and had swung out two feet over the track. When the plaintiff saw the second train coming along, he took hold of the girder again to pull it back so as to clear the track. The train came along at full speed, six or seven miles an hour. When the plaintiff saw the train coming, he motioned to the flagman as he did before, but he was not there. He then motioned to the train, and saw a man pulling a bell in the front. The train, however, did not slacken its speed, and the plaintiff pushed the girder back off the track. The first coach of the train passed the girder without hitting it, when the plaintiff, unable to hold the girder back, let go of it, and it swung over on the track and hit the second car somewhere about the middle of the car. The edge of the window caught the girder, which in some way caught the plaintiff's leg and injured him.

It seems to me quite clear that there was no evidence to justify a finding of negligence against the railroad company. There was no relation between the plaintiff and the railroad company that imposed upon the latter the duty of an employer towards an employé. The plaintiff was in charge of the work. He was perfectly familiar with the situation, and could see the danger in allowing this girder to swing out over the railroad track, and it was his duty to take measures to prevent an accident. He made no request to the railroad company to stop the trains while he was engaged in this work, but expected to be able to hold the girder back so that trains could pass. He held the girder back for the first train to pass; and, when the second train approached, he also held the girder back in a position to allow the train to pass in safety. There is nothing in the absence of the flagman that had anything to do with the accident, because all that he motioned the flagman to do was to stop the train until he could swing the girder back. He had swung the girder back before the train arrived, and he had it in

a position to enable the train to pass in safety. The difficulty was that his strength was not sufficient to enable him to continue to hold the girder so that it would not strike the train, and the real cause of the accident was that the plaintiff let it go and it swung out over the track after the first car of the second train had passed. The motorman testified that everything was clear on the track as he approached, and that there was nothing to indicate that there was any danger in proceeding, and this is confirmed by the plaintiff—that the first he knew of any danger was when the girder crushed into the second car, and that the plaintiff gave the motorman no signal to stop. It is quite impossible to see what more the defendant could have done, except ·to suspend the operation of its trains entirely, which was not requested, and there was no indication of danger in the train continuing, as the track was clear when it approached.

The defendant moved to dismiss the complaint both at the close of the plaintiff's case and at the close of all the testimony. That motion was denied, but it does not appear that the defendant excepted. The question as to whether the verdict was against the evidence is, however, presented by the appeal from the order denying a motion for a new trial. I also think it was error to refuse to charge as requested by the defendant that:

"If in approaching this iron the motorman saw that his car could pass in safety, and there was sufficient room for him to pass in safety, and the plaintiff gave no signal to indicate that he understood to mean to stop, then their verdict must be for the defendant, the iron having come in contact with the body of the car after the front had passed."

The court refused to charge this request, and charged the jury that:

"If the circumstances were such that an ordinarily prudent person in charge of this car would have been justified in concluding that he could have passed in safety, then the defendant would not have been guilty of negligence."

That was excepted to by the defendant. This was error. There was nothing to indicate that, if the girder was off the track, it was unsafe for the car to pass; and, if the plaintiff made no signal to stop the car, it was not the duty of the motorman to stop.

The judgment and order should therefore be reversed, and a new trial ordered, with costs to appellant to abide the event.

PATTERSON, P. J., and LAUGHLIN and SCOTT, JJ., concur. CLARKE, J., dissents.